**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1925-20

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

V.D.[1]

      Defendant-Appellant.

_____

Argued August 2, 2021 – Decided August 16, 2021

Before Judges Sabatino, Mawla and Rose.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 19-05-0787.

Lindsay B. Gargano, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Lindsay B. Gargano, of counsel and on the briefs).

---

[1]  We use initials to protect, posthumously, the identity of the victim of the alleged sexual assault, which apparently arose out of a domestic violence situation.  See R. 1:38-3(c)(12) (making confidential the names and addresses of victims or alleged victims of domestic violence or sexual offenses in criminal cases).

Nancy A. Hulett, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Nancy A. Hulett, of counsel and on the briefs).

PER CURIAM

This interlocutory appeal by a criminal defendant in a sexual assault case concerns the admissibility of a now-deceased victim's hearsay statements to a police officer. After conducting an evidentiary hearing under N.J.R.E. 104, the trial court ruled the statements admissible. The court found the statements met the hearsay exception for excited utterances under N.J.R.E. 803(c)(2). The court also ruled the statements were not "testimonial" and therefore were not excludable under the Confrontation Clauses of the United States and New Jersey Constitutions. Lastly, the court rejected defendant's argument under N.J.R.E. 403 that the probative value of the statements was substantially outweighed by alleged unfair prejudice.

On leave granted, we affirm the trial court's rulings. We do so substantially for the sound reasons stated by the motion judge, as amplified in this opinion.

I.

On the morning of March 1, 2019, Police Officer Sherlyn Courtney of the South Plainfield Police Department responded to the alleged victim's residence

2

after the dispatcher notified her of a 9-1-1 call placed at 9:29 a.m. by a "female screaming." The police records describe the call as a "female crying saying she doesn['']t want to fight anymore [and] doesn['']t want to talk about it." The records further reflect that Officer Courtney was dispatched to the scene one minute after the call at 9:30 a.m. According to the testimony of Officer Courtney, it took her "3 [to] 4 minutes at most" to arrive at the residence, although the dispatch report states it took her only one minute. Four other officers were dispatched and responded to the scene within four minutes of Officer Courtney's arrival.

Officer Courtney testified at the Rule 104 hearing that, upon arrival at the scene, she was not aware of the "nature of the call" other than that she was responding to a woman apparently in distress. The address to which she responded and the caller, L.B., were both known to Officer Courtney from previous incidents.

When she arrived, Officer Courtney saw a man later identified as L.B.'s father standing outside the house. The officer testified that, as she got out of her vehicle and walked up the driveway, she heard screaming or crying from a truck parked nearby. She then observed L.B. in the truck. At that point, Officer Courtney approached the partially open driver's side window of the truck. She

saw L.B. alone, wrapped in "a blanket or some kind of sweatshirt" and apparently without "any clothes on underneath." The officer described the victim's state at that moment as "sobbing, physically shaking. She couldn't really speak in full sentences, because she was crying so hard."

Officer Courtney's first attempt to communicate with L.B. was to calm her, because she was "crying so hard that she couldn't really get too much out those first you know forty-five seconds or minute or so." After the victim, who was still crying, calmed down enough to communicate, Officer Courtney asked her "what happened . . . [and] what could [the police] do to help her?"

At that point, L.B. made the inculpatory statements which are at issue in this appeal. Officer Courtney described the exchange, in pertinent part, as follows:

> I asked her [(L.B.)] you know what happened, you know what could we do to help her. And, the [sic] she explained that she had a fist fight with her fiancé or ex-fiancé. That they had been drinking during the night and they got into a fight. And, she showed me her finger, which looked like she had bite marks -- or you know they appeared to be like teeth marks on her finger. And, I could see that her hair was really thin in some spots, and it looked like maybe like almost bald spots or something.
>
> . . . .

A-1925-20

> [L.B.] told me she was -- her fiancé locked her in her room, pulled her hair out -- hair extensions out, which are attached to your hair, bit her, and digitally penetrated her -- her anus.
>
> [(Emphasis added).]

According to Officer Courtney, these descriptive statements were not a response to any specific questions.[2] Instead, the officer characterized them as unprompted responses to open-ended queries asking what she "could do to help" and "what [the victim] needed."

About a few minutes into the officer's conversation with the victim, defendant appeared, and "walked out of the house, into the garage." Defendant then turned around, slammed the door, and hid back inside the house, while Officer Courtney asked her to wait for questioning. The officer then left the victim in the truck to pursue defendant into the home. According to Officer Courtney, before they first spotted defendant by the garage, none of the responding officers were sure where she was or if she had fled the scene, because it all occurred "pretty quick."

---

[2] The prosecutor represented during the Rule 104 hearing that the violent assault was partially captured on video through in-home security cameras, but the video did not show the sexual portion of the assault. The prosecutor asserted the State's purpose in moving to have the victim's hearsay statements admitted at trial is "to have supporting evidence for a single charge in the indictment, which is the sexual assault charge, because that happened . . . behind closed doors."

A-1925-20

The indictment charged defendant with five counts, consisting of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1) (count one); fourth-degree criminal sexual assault, N.J.S.A. 2C:14-3(b) (count two); third-degree criminal restraint, N.J.S.A. 2C:13-2(a) (count three); and third-degree terroristic threats, N.J.S.A. 2C:13-3(a) (counts four and five).

The State moved to admit evidence of the victim's out-of-court statements to the police pursuant to the excited utterance exception to the hearsay rule, N.J.R.E. 803(c)(2).  Defendant opposed the motion, arguing the excited utterance exception was not satisfied under the circumstances because the declarant victim had a reasonable time to deliberate or fabricate before her accusatory statements to the officer.  Defendant further argued the statements were "testimonial" under the Confrontation Clause and thereby could not be admitted because the declarant, who has since died, cannot be cross-examined.  In addition, defendant argued the statements were unfairly prejudicial under Rule 403.

After considering the officer's testimony from the Rule 104 hearing and the briefs and oral arguments of counsel, Judge Diane Pincus granted the State's motion and found the victim's statements admissible at trial.  The judge issued a corresponding order and a written opinion on December 18, 2020.  As we will

6

explore, infra, the judge concluded the statements were admissible as excited utterances, were not "testimonial" under the Confrontation Clause, and should not be excluded under Rule 403 as unduly prejudicial. In the course of her analysis, the judge expressly found that Officer Courtney was a "credible witness," who testified about her interactions with the victim in a "forthright and candid manner" on both direct and cross-examination.

We subsequently granted defendant's motion for leave to appeal the motion judge's admissibility ruling. In her merits brief on appeal, defendant presents the following points:

> POINT I
>
> THE TRIAL COURT ERRED IN FINDING THE COMPLAINANT'S OUT-OF-COURT STATEMENT TO A POLICE OFFICER WAS PROVIDED WITHOUT A SUFFICIENT OPPORTUNITY TO DELIBERATE OR FABRICATE BECAUSE THERE IS NOTHING IN THE RECORD ESTABLISHING WHEN THE ALLEGED INCIDENT OCCURRED, HOW LONG THE COMPLAINANT WAS SITTING IN THE VEHICLE BEFORE CALLING 911, AND BECAUSE THE COMPLAINANT HAD AN OPPORTUNITY TO SPEAK WITH A 911 OPERATOR BEFOREHAND.
>
> POINT II
>
> THE TRIAL COURT ERRED IN FINDING THE COMPLAINANT'S OUT-OF-COURT STATEMENT NONTESTIMONIAL BECAUSE PRIMARY

7

PURPOSE OF THE OFFICER'S QUESTIONING WAS NOT TO MEET AN ONGOING EMERGENCY BUT TO GET THE COMPLAINANT TO PROVIDE A NARRATIVE ABOUT WHAT HAD HAPPENED.

Defendant also incorporates by reference her additional arguments from her moving appellate brief, contending the victim's statements must be excluded under Rule 403.

II.

We begin with a recognition of the well-settled principle that appellate review of evidentiary rulings generally entails considerable deference. Such rulings ordinarily "should be upheld 'absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment.'" State v. J.A.C., 210 N.J. 281, 295 (2012) (quoting State v. Brown, 170 N.J. 138, 147 (2001)); see also State v. Buda, 195 N.J. 278, 294 (2008). "An appellate court applying this standard 'should not substitute its own judgment for that of the trial court, unless the trial court's ruling is so wide of the mark that a manifest denial of justice results.'" Ibid. (quoting Brown, 170 N.J. at 147). In addition, we will not second-guess the judge's factual assessment that the officer's testimony at the Rule 104 hearing was credible. State v. Locurto, 157 N.J. 463, 472-73 (1999).

That said, we are mindful that, insofar as defendant asserts, among other things, her right of confrontation would be violated at trial, we of course must

adhere to constitutional principles in evaluating the trial court's decision, including the "testimonial" classification issue. See State v. Williamson, 246 N.J. 185, 199 (2021) (applying a de novo review standard in evaluating the legal issue of whether a trial court's admission of a victim's dying declaration violated the defendant's Sixth Amendment right to confrontation).

Guided by these standards, we affirm the trial court's determination that the victim's statements to Officer Courtney are admissible at trial. We do so substantially for the cogent reasons set forth in Judge Pincus's written opinion, amplified by some additional observations of our own. We address the three specific legal issues in turn.

A.

First, we agree with Judge Pincus that the State has satisfied the elements of the hearsay exception for an excited utterance, N.J.R.E. 803(c)(2). The Rule provides as follows:

> (c) Statements Not Dependent on Declarant's Availability. The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> . . . .
>
> (2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the

stress of excitement caused by the event or condition and without opportunity to deliberate or fabricate.

[Ibid.]

In essence, the exception has three components:(1) a "startling" event or condition; (2) the statement was made "while the declarant was under the stress of excitement caused by" that condition or event; and (3) without the opportunity for the declarant to "deliberate or fabricate." Ibid.

The judge found all three components were established by the State here. First, the judge noted that "the [alleged] sexual assault in this case was unquestionably a startling event." The judge further considered the victim's partially disrobed state covered only in blanket or sweatshirt, her act of locking herself in the car her "visibly upset" appearance, and her initial inability to "speak in full sentences." The judge remarked that the victim's partially disrobed condition suggested that "she was so fearful for her safety that she fled the home without dressing." The judge further noted Officer Courtney arrived at the residence within only a few minutes of the 9-1-1 call. Given these circumstances, the judge concluded, as to the Rule's second element, the victim was "still under the stress of the sexual assault at the time she made the [statements]."

10

With respect to the hearsay exception's temporal aspect, the judge inferred from the circumstances that the victim's statements had been made "shortly after the assault." As the judge wrote, the situation indicated that the victim's "powers of reflection and fabrication were suspended by the shock of the assault."

The judge recognized that the court did "not know the precise time that elapsed between the assault and the [9-1-1] call." Even so, the judge was satisfied that the temporal element of the excited utterance exception was met. Quoting a passage from Cestero v. Ferrara, 57 N.J. 497, 504 (1971), the judge found the circumstances in this case, as in Cestero, "reasonably warrant [the] inference that the statement[s] [were] made as an uncontrolled response to the shock of the event before reasoned reflection could have stimulated a self-serving response."

On appeal, defendant concedes the elements of a startling event and the declarant's apparent continued stress from that event. Defendant instead focuses on the temporal element, arguing that the State failed to prove L.B. lacked a reasonable opportunity to deliberate over or fabricate a narrative about what had occurred to her. In this regard, defendant contends the State was obligated to establish how much time had elapsed between the alleged sexual assault inside the home and her conversation with the police officer. We disagree.

11

We recognize that, in some instances, case law applying the excited utterance exception involves a factual record disclosing a timeline between the startling event and the declarant's statements. See, e.g., State v. Cotto, 182 N.J. 316, 330 (2005) (holding the exception inapplicable where witnesses to a robbery were interviewed by a police officer about fifteen to twenty minutes after the robbers had left their apartment); State v. Branch, 182 N.J. 338, 354-57 (2005) (holding the exception inapplicable where about twenty minutes passed between a parent's 9-1-1 call reporting a burglary and when police interviewed her children). However, a precise timeline is not required under the Rule. It is conceivable under Rule 803(c)(2) that a gap much longer than twenty minutes can be insufficient to provide the declarant with a reasonable opportunity to deliberate or fabricate, depending upon the situation.

The contextual nature of the time element is illustrated by the Supreme Court's opinion in Buda, 195 N.J. at 286. In Buda, the Court considered statements by a three-year-old child conveying that he had been physically abused by the defendant, his mother's boyfriend. The child had been driven to the hospital emergency room after his mother found him with signs that he had been beaten. Id. at 286. Once at the hospital, the child was interviewed by child welfare workers, and he indicated to them that the defendant had beaten him.

12

Even though the interview was conducted "several hours" after the events, the Court did not regard the passage of time as dispositive under N.J.R.E. 803(c)(2). Id. at 286, 295. The Court noted the child was sobbing in a "strange and frightening place," and that it was his first chance to speak outside of the defendant's presence. The time interval was not significant, given the "intervening action-filled chaos and stress-filled events." Id. at 297.

Here, the motion judge reasonably concluded that L.B. likewise did not appear to have had a reasonable opportunity to deliberate or fabricate before she was questioned by Officer Courtney about her ordeal that prompted her to call 9-1-1 for help. The surrounding circumstances are consistent with the judge's findings that L.B. had only recently escaped from defendant, and that she had hastily fled to her car, frightened and nearly naked, and locked the doors. The setting is not one of peaceful reflection or contemplation. We therefore affirm the judge's ruling that the excited utterance exception applies.

B.

We next consider defendant's argument that the admission of the deceased declarant L.B.'s hearsay statements against her at trial, without the ability to cross-examine L.B., violates her rights of confrontation under the Sixth

Amendment of the United States Constitution. We agree with the trial court's rejection of this claim.

The applicable principles under the prevailing Confrontation Clause doctrine have been well established since the United States Supreme Court's seminal opinion in Crawford v. Washington, 541 U.S. 36, 53-54 (2004). Applying a new constitutional test of admissibility, the Court ruled in Crawford that a "testimonial" hearsay statement by a non-testifying declarant may not be admitted at trial against a criminal defendant, unless the declarant is unavailable and the defendant had a prior opportunity to cross examine that declarant. Although the Court in Crawford did not define in depth what comprises a "testimonial" statement, it did so in subsequent cases.

Specifically, in Davis v. Washington, 547 U.S. 813 (2006), the Court set forth a "primary purpose" test for evaluating whether a statement is testimonial or, conversely, nontestimonial:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.
>
> [Id. at 822 (emphasis added).]

By contrast, the Court added:

14

> [Statements] are <u>testimonial when</u> the circumstances
> <u>objectively</u> indicate that there is <u>no such ongoing</u>
> <u>emergency, and</u> that <u>the primary purpose of the</u>
> <u>interrogation is to establish or prove past events</u>
> <u>potentially relevant to later criminal prosecution</u>.
>
> [<u>Ibid.</u> (emphasis added).]

Applying this "primary purpose" test, the Court ruled in <u>Davis</u> that statements resulting from the interrogation of a 9-1-1 caller were non-testimonial by nature because such statements are "<u>ordinarily</u> not designed primarily to 'establis[h] or prov[e]' some past fact, but to <u>describe current circumstances requiring police</u> <u>assistance</u>." <u>Id.</u> at 827 (emphasis added) (alterations in original).

By comparison, in <u>Hammon v. Indiana</u>, 547 U.S. 813 (2006), a case consolidated with <u>Davis</u>, the Supreme Court held that statements made by a declarant to police investigating a domestic disturbance after it had already subsided were testimonial in nature. <u>Id.</u> at 829-30. There, officers responded to a domestic dispute call. Upon their arrival at the residence, the declarant wife stated that "things were fine" and officers noticed no arguments or emergency in progress. <u>Ibid.</u> The officers further questioned the declarant a second time about "what happened," at which point the inculpatory hearsay statements were made. The declarant was interrogated in a different room from her spouse, and she also signed an affidavit. <u>Ibid.</u> Given these circumstances, the Court deemed

15

the statements to be testimonial, because their primary purpose was to collect information for a potential future criminal prosecution rather than to respond to an ongoing emergency.  Ibid.

Several years later in Michigan v. Bryant, 562 U.S. 344 (2011), the Court further refined the so-called "ongoing emergency" doctrine for evaluating whether statements to law enforcement officers are testimonial.  The five-justice majority in Bryant, joined by one concurrence, vacated the judgment of the Supreme Court of Michigan and held that the statements at issue were non-testimonial and their admission did not violate the defendant's Confrontation Clause rights.  Id. at 348-49.

The facts of Bryant arose when police officers responded to a call of a man wounded by gunfire at 3:25 a.m.  At the scene, the victim was found lying on the ground next to his car, struggling to hold onto life.  Officers repeatedly asked him "what had happened, who had shot him, and where the shooting occurred."  In response, he stated that a man named "Rick" shot him around 3:00 a.m. and that he recognized the defendant's voice from behind the door of the defendant's own home, where he was shot.  Id. at 349.  The conversation ended soon after, and the decedent was pronounced dead within hours.  Ibid.  The victim's statements led officers to the scene of the shooting.  At trial, the police

16

officers told the jury, over defendant's objection, what the decedent had said to them in response to their queries.

The Court majority in Bryant noted that the facts, unlike Davis and Hammon, did not concern a domestic dispute but instead involved "a victim found in a public location, suffering from a fatal gunshot wound, and a perpetrator whose location was unknown" when police arrived at the scene. Id. at 359. The majority explained that the "ongoing emergency" analysis is a "highly context-dependent inquiry." Id. at 363. Various factors may be considered, although not necessarily determinative on their own, including such things as: the "victim's medical state," the "magnitude of a continuing threat," and the formality or informality of the interrogations. Id. at 364-66. More succinctly: "the existence and duration of an emergency depend on the type and scope of danger posed to the victim, the police, and the public." Id. at 370-71.

The Bryant majority instructed that a trial court should consider "[i]n addition to the circumstances in which an encounter occurs, [whether] the statements and actions of both the declarant and interrogators provide objective evidence of the primary purpose of the interrogation." Id. at 367 (emphasis added). Such a "combined approach . . . ameliorates problems that could arise

from looking solely to one participant" who may have mixed motives by virtue of being law enforcement or a declarant. Id. at 368.

Applying these concepts, the majority concluded the victim's statements to the officers at the scene were primarily made in connection with the investigation of an ongoing emergency, and, hence, nontestimonial in nature. Id. at 378. Justices Scalia and Ginsburg dissented, finding the statements were indeed testimonial and rejecting the majority's assessment of their primary purpose. Id. at 379-96.

Our State's own case law has duly applied the "primary purpose" test. See, e.g., State v. Wilson, 227 N.J. 534, 546-47 (2017) (evaluating whether "drug free zone" maps are testimonial, and concluding the primary purpose of their creation was not to establish past events relevant to a later criminal prosecution); State v. Michaels, 219 N.J. 1, 9 (2014) (by contrast, holding that a forensic report establishing that drugs found in a defendant's bloodstream rendered her unfit to drive a motor vehicle was testimonial, because it was created for the primary purpose of supporting a prosecution for vehicular homicide).

In the present case, the motion judge reasonably concluded that L.B.'s statements to Officer Courtney were nontestimonial, and that the primary purpose of the interview was to address an ongoing emergency. Among other

18

things, the judge duly considered the physical and emotional state of the victim, the short time between the 9-1-1 call and the officers' response, the open-ended and conditional nature of Officer Courtney's questions, the victim's inability to form complete sentences due to her sobbing, and the fact that Officer Courtney was unaware of the specific reason for the 9-1-1 call at the time of her arrival. The judge found the officer's questions were informal in nature and did not have the primary purpose of eliciting support for future criminal prosecution, but instead were an effort to respond to an ongoing emergency.

We agree with the motion judge's sound reasoning. The officer's questions were designed to elicit immediate facts and to help inform the police of what steps they might need to take to assure the well-being of the persons on site, for instance keeping the victim separated safely from her alleged attacker. As the Court observed in Hammon, the exigencies of apparent situations of domestic violence "may often mean that 'initial inquiries' [by responding police officers] produce nontestimonial statements." 547 U.S. at 832. The analysis might be quite different if, say, the officers had escorted L.B. safely into the house, secured the premises, allowed her to get dressed and warm, and calmly interviewed her at length.

We therefore affirm the trial court's well-reasoned determination that the admission of the victim's at-the-scene statements would not violate the Confrontation Clause, despite the inability at trial to cross-examine her.

C.

Little needs to be said about the trial court's rejection of defendant's arguments for exclusion under Rule 403. That rule, couched in language using the permissive term "may," gives trial courts wide discretion to exclude relevant evidence only where countervailing factors such as unfair prejudice are shown to "substantially outweigh" the evidence's probative value. N.J.R.E. 403. The court did not abuse its broad discretion in declining to bar this highly probative evidence. Indeed, the evidence is essential to the State's ability to prove a sexual assault occurred since there were apparently no eyewitnesses and the sexual part was not recorded.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1925-20